711 S.E.2d 585

William J. HUSTON and Connie A. Huston, Plaintiffs

v.

MERCEDES–BENZ USA, LLC, a Foreign Corporation, and Smith Motor Cars, a West Virginia Corporation, Defendants.

No. 35702.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 2011.

Decided June 14, 2011.

---

Mark A. Swartz, Mary Jo Swartz, Swartz Law Offices, PLLC, Saint Albans, WV, for Plaintiffs.

Harry F. Bell, Jonathan W. Price, The Bell Law Firm, PLLC, Charleston, WV, for Defendants.

DAVIS, Justice:

The instant proceeding comes before this Court upon questions certified by the Circuit Court of Kanawha County, which questions ask us to determine the scope of the circuit court's authority to adjudicate the Hustons' lawsuit against the defendants herein. In the underlying litigation from which these questions have arisen, the plaintiffs below, William J. and Connie A. Huston (hereinafter "the Hustons"), sought to enforce the terms of a global settlement agreement, to which they had been a party, in the Circuit Court of Kanawha County. The Hustons filed the instant lawsuit when the defendants below, Mercedes–Benz USA, LLC (hereinafter "Mercedes–Benz") and Smith Motor Cars (hereinafter "Smith"), allegedly refused to repair the Hustons' sports utility vehicle in accordance with the parties' settlement agreement. Upon a review of the parties' arguments to this Court, the designated record, and the pertinent authorities, we conclude that the circuit court does not have jurisdiction to consider the Hustons' lawsuit because continuing jurisdiction over the global settlement agreement has been retained by the federal district court where the settlement agreement originally was reached. As such, the Hustons may not properly maintain

their suit against the defendants in the Circuit Court of Kanawha County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

A brief recitation of the facts giving rise to the underlying proceeding is helpful to provide context for the two questions certified by the circuit court. On August 25, 1998, Mr. and Mrs. Huston purchased from defendant Smith a new 1999 model ML 320 sport-utility vehicle manufactured by defendant Mercedes–Benz. Thereafter, on May 4, 2001, an unrelated person filed a class action in Pennsylvania alleging that certain motor vehicles, which were manufactured by Mercedes–Benz between 1998 and 2001 and which were equipped with a "Flexible Service System," used excessive oil, experienced the formation of oil sludge, and sustained engine damage upon the use of certain types of motor oil in such vehicles. *See O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266 (E.D.Pa.2003). The class action suit, which initially was filed in Pennsylvania state court, subsequently was removed to federal court, specifically the United States District Court for the Eastern District of Pennsylvania.

As a result of this litigation, a global class action settlement agreement ultimately was reached. An option was provided to owners of the specified motor vehicles to opt out of the class action and resulting settlement. However, the Hustons, whose Mercedes–Benz vehicle was in the class action's enumerated list of vehicles, did not opt out but, instead, remained in the class and participated in the global class action settlement. In summary, the settlement agreement offered the aforementioned owners extended warranty protections and further afforded owners whose motor vehicles experienced the identified engine problems repair services and compensation therefor. The settlement

agreement finally indicated that the federal district court in which the class action was being litigated would retain continuing jurisdiction over the settlement agreement:

**Continuing Jurisdiction.** Without affecting the finality of the Final Judgment, the Court shall retain continuing jurisdiction over the Action and the Settling Parties, including all members of the Settlement Class, the administration and enforcement of the settlement, and the benefits to the Settlement Class hereunder, including for such purposes as supervising the implementation, enforcement, construction, and interpretation of this Settlement Agreement, the order preliminarily approving the settlement, and the Final Judgment, and hearing and determining an application by Settlement Class Counsel for an award of attorneys' fees and reimbursement of reasonable costs and expenses. Any disputes or controversies arising with respect to the interpretation, enforcement or implementation of the Settlement shall be presented by motion to the Court.

(Emphasis in original).

Likewise, the federal district court indicated its intent to retain jurisdiction over the parties' settlement agreement in its order approving of the global class action settlement, expressly stating, in its April 2, 2003, order that, "[w]ithout affecting the finality of the Final Judgment, the Court **RETAINS** continuing jurisdiction over the Action and the Settling Parties." *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. at 312 (emphasis in original).[1]

Returning to the instant proceeding, in March 2008, the Hustons began noticing that their Mercedes–Benz vehicle was consuming what they perceived to be an excessive amount of oil because they were required to add a quart of oil after every 800 miles of

---

1. The federal district court's ensuing dismissal of the case as a result of the parties' settlement is based upon Rule 23(e) of the Federal Rules of Civil Procedure, which governs the dismissal of a settled class action lawsuit, and Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, which addresses stipulated dismissals. Nearly identical rules governing the dismissal of class action proceedings have been adopted by this State and are set forth in the West Virginia Rules of Civil Procedure. *See* W. Va. R. Civ. P. 23(e) (explaining procedure for dismissal or compromise of class action) and W. Va. R. Civ. P. 41(a)(1)(ii) (reiterating federal standard for stipulated dismissals).

driving the vehicle. They also observed the accumulation of oil sludge. Upon presenting their Mercedes–Benz to Smith for repairs, the Hustons claim that Smith technicians informed them that the manufacturer's guidelines did not consider oil consumption to be excessive until oil had to be added after 600–650 miles of driving. Accordingly, the Hustons allege that Smith refused to provide further remedies to them in accordance with the global settlement agreement.

In an attempt to enforce the rights afforded to them by the global class action settlement agreement, the Hustons filed the instant proceeding in the Circuit Court of Kanawha County on October 15, 2008, alleging causes of action for failure to honor express warranties; violation of the West Virginia Lemon Law, *i.e.*, W. Va.Code § 46A–6A–1 *et seq.*, and the West Virginia Consumer Protection Act, *i.e.*, W. Va.Code § 46A–6–101 *et seq.*; and noncompliance with the federal Magnuson–Moss Act, *i.e.*, 15 U.S.C. § 2310(d)(1). The defendants, Mercedes–Benz and Smith, moved to dismiss the Hustons' lawsuit claiming that the circuit court did not have jurisdiction to adjudicate the Hustons' claims. By order entered October 8, 2009, the circuit court denied the defendants' motion to dismiss.

Following further proceedings, the defendants moved for summary judgment on the grounds that the remedies the Hustons could seek from them were limited to those set forth in the global settlement agreement; on this point, the circuit court granted partial summary judgment to the defendants. In so ruling, the circuit court, by order entered May 25, 2010, additionally certified two questions for resolution by this Court, which certified questions presumably reflect its respective rulings upon the defendants' motions, *i.e.*, the first question summarizing the denial of the defendants' motion to dismiss and the second question reflecting the partial grant of the defendants' motion for summary judgment. The certified questions, and the circuit court's answers, are as follows:

1. Does the Circuit Court of Kanawha County, West Virginia, have jurisdiction over a lawsuit wherein the Plaintiffs purport to be seeking to enforce the terms of a federal class action settlement, where the federal District Court that had jurisdiction of that class action expressly retained jurisdiction over the parties thereto? **Yes.**

2. Are member [sic] of a federal court class who released all asserted or potential claims in exchange for the relief granted to the class under the federal court settlement barred from nonetheless pursuing claims, including a statutory "lemon law" claim under West Virginia law under the guise of enforcing the settlement and which could result in affirmative relief well beyond what is available under the settlement terms? **Yes.**

(Emphasis in original). From the circuit court's certification order, the parties now appear before this Court.

## II.

## STANDARD OF REVIEW

■ The case *sub judice* presents two certified questions for this Court's consideration. We previously have held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). In keeping with this standard, we will consider the queries posed by the circuit court.

## III.

## DISCUSSION

Two questions have been certified to this Court by the Circuit Court of Kanawha County. In summary, these questions request us to determine the court's authority to adjudicate the Hustons' lawsuit. We will consider each certified question in turn.

### A. First Certified Question

The first question certified to this Court by the circuit court asks:

Does the Circuit Court of Kanawha County, West Virginia, have jurisdiction over a lawsuit wherein the Plaintiffs purport to be seeking to enforce the terms of a federal

class action settlement, where the federal District Court that had jurisdiction of that class action expressly retained jurisdiction over the parties thereto?

In response to this question, the circuit court answered, "Yes."

Before this Court, Mercedes–Benz and Smith (hereinafter collectively referred to as "the defendants") disagree with the circuit court's response to this certified question and argue, instead, that because the United States District Court for the Eastern District of Pennsylvania (hereinafter referred to as "the federal district court") specifically retained jurisdiction over the global class action settlement agreement, jurisdiction lies exclusively with the federal district court. Accordingly, the defendants contend that the circuit court does not have jurisdiction to adjudicate the Hustons' lawsuit. In support of their argument, the defendants assert that the federal district court retained continuing jurisdiction over the settlement agreement, including proceedings seeking to enforce the agreement's terms, as contemplated by the United States Supreme Court in *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and later interpreted and applied by the Fourth Circuit Court of Appeals in *Smyth v. Rivero*, 282 F.3d 268 (4th Cir.2002), and *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746 (4th Cir.2003). The

defendants further represent that the federal district court's order specifically expresses its intent to retain continuing jurisdiction over the settlement agreement. Finally, the defendants contend that the Hustons are parties to, and thus are bound by, the settlement agreement because the Hustons did not opt out of the class action.

By contrast, the Hustons respond that the circuit court correctly answered the first certified question to find that jurisdiction is proper in the Circuit Court of Kanawha County, West Virginia. First, the Hustons contend that the circuit court has personal jurisdiction over all the parties to this proceeding: the Hustons purchased, and the defendants sold, the subject motor vehicle in Kanawha County; the alleged injuries occurred in Kanawha County; and both defendants conduct business in Kanawha County. Additionally, the Hustons contend that the settlement agreement, itself, did not provide a specific procedure for members of the plaintiff class to obtain reimbursement for their previous repair costs, suggesting, instead that recourse may be had through the courts. Absent explicit direction as to how injured owners are to seek compensation, the Hustons contend that they were permitted to file suit in Kanawha County Circuit Court. *Citing O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. 266, 297 (E.D.Pa.2003).[2] Fur-

---

**2.** We find the Hustons' reliance on this particular portion of the district court's order in *O'Keefe* to be misplaced as the referenced language appears to have been taken out of context and afforded a much more general application than the very narrow construction clearly intended by that tribunal. In *O'Keefe*, the federal district court considered, and ultimately approved, the class settlement, which is the same settlement at issue in the case *sub judice*. During the course of this analysis, the federal court also considered the challenges raised by various objectors. One objector in particular, Nicole Yatooma, objected to the then-proposed settlement because she perceived it to be unfair to prior owners or lessees of the affected Mercedes vehicles. Rejecting Ms. Yatooma's argument that the settlement agreement was unfair to such prior owners or lessees, the federal district court explained that "prior owners and lessees are not members of the class and are not bo[u]nd by the terms of the settlement. They may pursue their own claims or a separate class action." 214 F.R.D. at 296.

The federal district court then addressed Ms. Yatooma's argument that the proposed settle-

ment did not include a "specifically defined procedure for reimbursement for previous repairs." 214 F.R.D. at 297 (citation omitted). The federal court also rejected this contention, reiterating its prior suggestion that,

[i]f owners or lessees are dissatisfied with the outcome of a "look back" application, they are free to pursue compensation through the courts. They may bring an independent suit or a contempt proceeding before this court. The settlement does not release MBUSA [Mercedes–Benz] from violations of the settlement agreement.

*Id.* (citations omitted). Recognizing that prior owners and lessees, whose interests Ms. Yatooma sought to protect through her objection, are permitted to bring an independent action to obtain compensation for their injuries is consistent with the terms of the settlement agreement insofar as the court determined that neither of these groups are included within the class and, thus, are not parties to the class action settlement agreement. The court did not, in the course of its consideration of Ms. Yatooma's objections, address the

thermore, the Hustons attempt to distinguish the nature of the claims they herein assert: the Hustons say that they are seeking to enforce the warranty, whereas the defendants have interpreted the Hustons' lawsuit as seeking to enforce the settlement agreement.

The pivotal issue presented by the first certified question is whether the Circuit Court of Kanawha County, West Virginia, has jurisdiction to adjudicate the parties' dispute that has arisen from the Hustons' attempt to enforce the underlying class action settlement agreement, which agreement, in turn, extended the Hustons' new vehicle warranty for their Mercedes sport-utility vehicle. The United States Supreme Court case of *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), is determinative of this issue.

In *Kokkonen*, the Supreme Court was asked to determine whether a federal district court, in which a settlement agreement had been reached in a prior lawsuit, had continuing jurisdiction to enforce the terms of the same settlement agreement in a subsequent lawsuit.[3] The Court began its analysis by first recounting the circumstances of the pri-

or lawsuit that culminated in the subject settlement agreement:

the parties executed a Stipulation and Order of Dismissal with Prejudice, dismissing the complaint and cross-complaint.... [T]he District Judge signed the Stipulation and Order under the notation "It is so ordered." *The Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement.*

*Kokkonen*, 511 U.S. at 376–77, 114 S.Ct. at 1675, 128 L.Ed.2d 391 (emphasis added). Following the parties' settlement of the case, a dispute arose as to whether the parties were complying with the terms of the settlement agreement. Ultimately, one of the parties moved the court that had presided over the previous litigation to enforce the settlement agreement. The other party objected, claiming that the district court lacked subject matter jurisdiction over the parties' agreement. Both the district court and the Ninth Circuit Court of Appeals concluded that the district court possessed an "inherent power" to decide the enforcement motion. *Id.*

On appeal, however, the Supreme Court determined that the limited nature of federal court jurisdiction did not afford the district

---

enforcement rights of class members who were current owners provided by the settlement agreement. Instead, this commentary has limited application to only prior owners or lessees who, as such, are not members of the plaintiff class.

In this case, the Hustons rely upon the above-quoted language to suggest that they may (1) bring an independent suit; (2) bring a contempt proceeding before the federal district court; or (3) otherwise hold Mercedes–Benz responsible for its violations of the settlement agreement. While the federal district court perhaps could have worded its conclusion more artfully, the intent of the court's ruling is clear: prior owners or lessees, as non-parties to the settlement agreement, may bring independent actions to enforce the settlement agreement. The federal court, in stating this conclusion, did not discuss the rights of current owners who are members of the plaintiff class. Thus, accepting the Hustons' reading of this language to apply to current Mercedes owners, who did not opt out of the class action settlement but who, instead, fully participated therein, would nullify the settlement's terms; provide an unfair extra benefit to plaintiffs who are permitted to bring additional lawsuits; and unfairly prejudice Mercedes–Benz

who, in consideration for the release of claims against it, paid substantial sums in settlement and significantly extended the warranty period of the class members' Mercedes vehicles pursuant to the settlement agreement. Furthermore, neither Mercedes–Benz nor Smith contends that the Hustons are foreclosed from seeking enforcement of the class action settlement; rather, they argue that jurisdiction for such enforcement proceedings is proper only in the United States District Court for the Eastern District of Pennsylvania insofar as that court specifically has retained continuing jurisdiction over the class action settlement agreement as reflected in its final order. *See* 214 F.R.D. at 312 ("Without affecting the finality of the Final Judgment, the Court **RETAINS** continuing jurisdiction over the Action and the Settling Parties." (emphasis in original)). Therefore, we reject the Hustons' contrary interpretation of the above-quoted language.

3. As with the underlying proceedings in the case *sub judice*, in *Kokkonen*, the federal district court's dismissal of the class action following the parties' settlement was based upon Rule 23(e) and Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. *See supra* note 1.

court inherent authority to adjudicate the subject motion to enforce the parties' settlement agreement because the court did not specifically retain continuing jurisdiction. In explaining its ruling, the Court observed that a district court wishing to retain continuing jurisdiction over a settlement agreement reached during proceedings over which it has presided after the case has been resolved and the litigation has concluded must expressly state its intention to retain jurisdiction in its final dispositional order. Thus, a court would retain continuing jurisdiction

> if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal— either [1] by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or [2] by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Kokkonen,* 511 U.S. at 381, 114 S.Ct. at 1677, 128 L.Ed.2d 391. Where, however, as with the facts in *Kokkonen,* the district court's order indicated "[t]he judge's mere awareness and approval of the terms of the settlement agreement[, such language] do[es] not suffice to make the [settlement's terms] part of his order." *Id.* Absent an express statement evidencing the district court's intention to retain continuing jurisdiction over the parties' settlement agreement, then, the Court concluded that the district court did not have continuing jurisdiction to adjudicate the subject enforcement motion.

In *Smyth v. Rivero,* 282 F.3d 268 (4th Cir.2002), the United States Court of Appeals for the Fourth Circuit considered the Supreme Court's ruling in *Kokkonen* while deciding a request for attorney's fees following the partial settlement of a case involving state-funded assistance to families. Explaining the import and effect of a court's adoption or incorporation of a settlement agreement in its order, the appellate court observed that

> [a] court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order

with judicial imprimatur, and the continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of the agreement. Where the obligation to comply with the terms of the agreement is not enforceable as an order of the court but only as a contractual obligation, neither judicial approval nor oversight are ordinarily involved.

*Smyth,* 282 F.3d at 282 (footnote omitted). Reiterating the Supreme Court's observations in *Kokkonen,* the court further explained that

> [t]he obligation to comply with a settlement's terms must be expressly made part of a court's order for jurisdiction to enforce the settlement after dismissal of the action to exist. *See Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673[, 128 L.Ed.2d 391] ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."). Either incorporation of the agreement or a separate provision retaining jurisdiction over the agreement will suffice for this purpose. *Id.* Where a court merely recognizes the fact of the parties' agreement and dismisses the case because there is no longer a dispute before it, the terms of the agreement are not made part of the order and consequently will not serve as a basis for jurisdiction.
>
> The rule that a court's order must embody a settlement agreement to serve as a basis of jurisdiction to enforce the agreement is "adhered [to] strictly...." *In re Phar–Mor, Inc. Securities Litigation,* 172 F.3d 270, 274 (3d Cir.1999). This rule is interpreted to require that the district court give a clear indication that it is incorporating the terms of the agreement into that order or retaining jurisdiction over the agreement.

*Smyth,* 282 F.3d at 283 (additional citations omitted). As with the order at issue in *Kokkonen,* the *Smyth* Court ultimately found that the federal district court did not have continuing jurisdiction because it had failed to indicate its intention to retain jurisdiction over the parties' settlement agreement in its final order.

Further interpreting and applying the Supreme Court's ruling in *Kokkonen*, the Fourth Circuit Court of Appeals again considered *Kokkonen*'s jurisdictional guidelines in *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746 (4th Cir.2003). In *Marino*, the court considered whether the federal district court had jurisdiction to decide whether a class action settlement agreement precluded an attorney from pursuing a subsequent claim for attorney's fees for legal work she allegedly had performed for her client in relation to his participation in the plaintiff class. The Fourth Circuit observed that because the district court specifically had retained jurisdiction over the class action settlement agreement in its final order approving the same, it had jurisdiction to adjudicate the subsequent attorney's fee dispute. In so ruling, the court applied the *Kokkonen* criteria by which a court may retain jurisdiction over a settlement agreement and concluded that the district court had expressly indicated its intent, in its final order, to retain jurisdiction over disputes related to the settlement agreement. *See Marino*, 349 F.3d at 752–53. The appellate court's conclusion was based upon the district court's final order approving the class action settlement in which it specifically had stated that the "Court shall have and retain exclusive jurisdiction with respect to ... any applications or disputes concerning attorney's fees ... which may arise." 349 F.3d at 749 (citation omitted). This express intention to retain jurisdiction in the federal district court order underlying the *Marino* decision is similar to the language employed by the federal district court in the proceedings giving rise to the case *sub judice*.

■ In addition to the Fourth Circuit Court of Appeals, many other jurisdictions also have interpreted *Kokkonen* as requiring a federal district court wishing to retain jurisdiction over a settlement agreement to include in its order approving of the settlement either an express intention to retain jurisdiction or the specific terms of the parties' agreement. *See, e.g., Baella–Silva v. Hulsey*, 454 F.3d 5 (1st Cir.2006) (finding continuing jurisdiction); *Floyd v. Ortiz*, 300 F.3d 1223 (10th Cir.2002) (same); *Flanagan*

*v. Arnaiz*, 143 F.3d 540 (9th Cir.1998) (finding retention of exclusive jurisdiction); *California v. Randtron*, 69 F.Supp.2d 1264 (E.D.Cal.1999) (finding continuing jurisdiction); *Keith v. Volpe*, 965 F.Supp. 1337 (C.D.Cal.1996) (same), *rev'd on other grounds*, 118 F.3d 1386 (9th Cir.1997). *Cf. Hospitality House, Inc. v. Gilbert*, 298 F.3d 424 (5th Cir.2002) (concluding lower court's order was insufficient to confer continuing jurisdiction); *Lamp v. Goetlle, Inc.*, No. C-040461, 2005 WL 927164 (Ohio Ct.App. Apr.22, 2005) (same). Based upon these authorities, we therefore hold that a court must express its intention to retain continuing jurisdiction over a settlement agreement in its final order approving of the parties' settlement. To retain such jurisdiction, the court must either (1) include in its final approval order an express provision retaining jurisdiction over the parties' settlement agreement or (2) incorporate in its final approval order the precise terms of the parties' settlement agreement.

■ Applying this holding to the facts of the case *sub judice*, we find the answer to the first certified question to be "No." The Circuit Court of Kanawha County, West Virginia, does not have jurisdiction over the instant proceeding because the federal district court expressly retained jurisdiction over the class action settlement agreement sought to be enforced herein. In the underlying proceedings, the federal district court complied with both of the *Kokkonen* criteria enabling it to retain jurisdiction over the parties' settlement agreement. First, the district court's final order includes an express statement retaining jurisdiction: the court's order expressly states that, "[w]ithout affecting the finality of the Final Judgment, the Court **RETAINS** continuing jurisdiction over the Action and the Settling Parties." *O'Keefe v. Mercedes–Benz USA, LLC*, 214 F.R.D. at 312 (emphasis in original). Second, the district court's final order incorporates the specific terms of the parties' settlement agreement: the jurisdiction retention language used in the court's order restates *verbatim* the first part of the "Continuing Jurisdiction" paragraph of the parties' settlement agreement. Thus, the federal district

court undeniably incorporated in its final order all of the necessary elements to permit it to retain continuing jurisdiction over the subject settlement agreement as contemplated by *Kokkonen*. Accordingly, the United States District Court for the Eastern District of Pennsylvania possesses jurisdiction to adjudicate any disputes arising out of the enforcement of the settlement agreement, and jurisdiction elsewhere is not proper. Therefore, we answer the first certified question in the negative.

### B. Second Certified Question

The circuit court's second certified question posits:

Are member [sic] of a federal court class who released all asserted or potential claims in exchange for the relief granted to the class under the federal court settlement barred from nonetheless pursuing claims, including a statutory "lemon law" claim under West Virginia law under the guise of enforcing the settlement and which could result in affirmative relief well beyond what is available under the settlement terms?

In response to this question, the circuit court answered, "Yes."

■ To answer the circuit court's second certified question, it first is necessary to determine whether the parties' settlement agreement permits the Hustons to pursue additional claims or whether, through their acquiescence to the settlement agreement, the Hustons have waived their right to assert additional claims as consideration for the benefits the settlement agreement has afforded to them. Insofar as we have concluded, in answer to the first certified question, that jurisdiction over the parties' settlement agreement remains with the federal district court approving of such settlement in the first instance, we are precluded from definitively answering the second certified question because such an analysis would entail an interpretation of the very settlement agreement over which the federal district court has retained jurisdiction. Jurisdiction over the parties' settlement agreement, including the enforcement of its terms and the interpretation of the meaning of its provisions,

lies in the United States District Court for the Eastern District of Pennsylvania as specifically expressed in the federal district court's order. *See O'Keefe v. Mercedes–Benz USA, LLC,* 214 F.R.D. at 312. Accordingly, this Court does not have jurisdiction to ascertain what actions are permitted or prohibited by the agreement, and the parties are without the authority to confer such jurisdiction upon this Court. In short, "[p]arties cannot confer jurisdiction on this Court directly or indirectly where it is otherwise lacking." Syl. pt. 2, in part, *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995). *Accord* Syl. pt. 3, in part, *Smith v. Andreini,* 223 W.Va. 605, 678 S.E.2d 858 (2009); Syl. pt. 1, in part, *C & O Motors, Inc. v. West Virginia Paving, Inc.,* 223 W.Va. 469, 677 S.E.2d 905 (2009).

■ Moreover, because we do not have jurisdiction over the parties' settlement agreement, any decision we would render as to whether the agreement permits the Hustons to bring the causes of action referenced in the second certified question would be mere academic conjecture as this issue would have to be re-adjudicated by the tribunal having actual jurisdiction over this matter, *i.e.,* the federal district court. In other words, our resolution of this question would not be a final determination of the parties' rights but would, instead, be in the nature of an advisory opinion since the federal district court, and not the courts of this State, is the court that has the power to decide whether the claims asserted by the Hustons are consistent with or contrary to the settlement agreement's terms. We previously have held that "[c]ourts are not constituted for the purpose of making advisory decrees or resolving academic disputes...." Syl. pt. 2, in part, *Harshbarger v. Gainer,* 184 W.Va. 656, 403 S.E.2d 399 (1991). *Accord State ex rel. ACF Indus., Inc. v. Vieweg,* 204 W.Va. 525, 533 n. 13, 514 S.E.2d 176, 184 n. 13 (1999) ("[T]his Court cannot issue an advisory opinion with respect to a hypothetical controversy."); *Farley v. Graney,* 146 W.Va. 22, 29–30, 119 S.E.2d 833, 838 (1960) ("[C]ourts will not ... adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controver-

sies.... Nor will courts resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies." (citations omitted)). Given that this Court is not constituted to issue advisory opinions, we are precluded from answering the second certified question.

## IV.

### CONCLUSION

Having considered the questions certified by the Circuit Court of Kanawha County, we answer the first certified question as follows:

> Does the Circuit Court of Kanawha County, West Virginia, have jurisdiction over a lawsuit wherein the Plaintiffs purport to be seeking to enforce the terms of a federal class action settlement, where the federal District Court that had jurisdiction of that class action expressly retained jurisdiction over the parties thereto?

Answer: No

Furthermore, our negative response to the first certified question, concluding that the circuit court does not have jurisdiction over the underlying proceedings, forecloses our response to the second certified question, inquiring about the propriety of the Hustons' suit *per se*, insofar as such action, if any may be maintained, may not be brought in the courts of this State.

Certified Questions Answered.

Justices BENJAMIN and McHUGH not participating.

Judge KIRKPATRICK sitting by temporary assignment.

Chief Justice WORKMAN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

WORKMAN, Chief Justice, concurring, in part, and dissenting, in part:

I concur with the majority that the answer to the first certified question in this case should be "no." I dissent, however, to the majority's decision to adopt principles of federal jurisdiction as the law governing state court jurisdiction.

The question in this case is whether a federal district court in Pennsylvania properly retained jurisdiction over disagreements arising from a class action settlement agreement. As the majority correctly notes early in its analysis, "[t]he United States Supreme Court case of *Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), is determinative of this issue." Indeed, whether a federal court has jurisdiction to hear a case is a question that can *only* be decided under federal law. Accordingly, I would merely apply the holding in *Kokkonen,* as interpreted by other federal courts, to find that the United States District Court for the Eastern District of Pennsylvania did, in fact, correctly retain jurisdiction over the instant dispute.

Rather than simply applying well-settled federal law to the limited question before the Court, the majority issues a new syllabus point adopting the holding of *Kokkonen* as the law governing jurisdiction in West Virginia. Nothing in this case supports such a result. This Court has not been called upon to determine whether a West Virginia court properly retained jurisdiction over a settlement agreement; rather, we are asked to decide whether a *federal* court retained jurisdiction. Such an issue may *only* be governed by federal law, as federal jurisdiction is determined by federal law alone. *See Int'l Sci. & Tech. Inst., Inc. v. Inacom Comm., Inc.,* 106 F.3d 1146, 1153 (4th Cir.1997) ("While Article III of the Constitution authorizes judicial power of 'cases, in law and equity, arising under' the Constitution, laws, and treaties of the United States, the district courts have only that jurisdiction that Congress grants through statute." (original emphasis omitted)). Indeed, it is axiomatic that no law of this State can have any impact on whether a federal court has jurisdiction over a case. Consequently, the new syllabus point is wholly unnecessary in this case and, in fact, is improper.

Moreover, the majority creates this new syllabus point without this issue having been raised, briefed or argued, and without any explanation as to why the holding of *Kokkonen* should be adopted as the law of this

State. Importantly, in *Kokkonen*, the Supreme Court's analysis clearly turns on the fact that federal courts are courts of limited jurisdiction. 511 U.S. at 377 & 380–81, 114 S.Ct. at 1675 & 1676–77, 128 L.Ed.2d 391. The same is not true of state courts. *Thompson v. City of Atlantic City*, 190 N.J. 359, 378–79, 921 A.2d 427, 438–39 (2007) ("[F]ederal courts only have limited jurisdiction-that is the jurisdiction to hear cases authorized by the Federal Constitution or federal statutes.... On the other hand ... state courts are invested with general jurisdiction that provides expansive authority to resolve myriad controversies brought before them."). Consequently, not only does the majority provide no explanation for its decision to adopt the new syllabus point, the reasoning on which the United States Supreme Court based its holding in *Kokkonen* is not applicable to the state court context.[1]

Despite the lack of any legal or factual basis on which to issue the new syllabus point, the majority not only sets forth the new law, it then purports to rely on that syllabus point to find that the federal court properly retained jurisdiction in this case. As already explained, however, federal court jurisdiction is purely an issue of federal law. Accordingly, the majority errs in relying on West Virginia law, i.e. its newly created syllabus point, to find that the federal court in Pennsylvania has jurisdiction over the underlying settlement agreement.

For these reasons, I respectfully dissent to the majority's adoption of federal jurisdictional law in this state without providing any basis for such a broad expansion. Nevertheless, under *Kokkonen* and it prodigy, the federal district court properly retained jurisdiction over disputes arising from the class

action settlement agreement in this case, thereby divesting the courts of this State of jurisdiction.[2] Accordingly, I concur in the result reached by the majority.

---

1. Even more telling is the fact that only one other state, Ohio, has even arguably adopted the holding of *Kokkonen* as state law. I say arguably because the only Ohio cases purporting to adopt the *Kokkonen* holding are both unpublished opinions issued by Ohio's intermediary appellate court. *See Grace v. Howell*, No. 20283, 2004 WL 1753386 (Ohio Ct.App. Aug.6, 2004); *Lamp v. Richard Goettle, Inc.*, No. C–040461, 2005 WL 927164 (Ohio Ct.App. Apr.22, 2005).

2. The majority states, without providing any legal support, that because the federal court retained

jurisdiction, "jurisdiction elsewhere is not proper." While I agree with this conclusion, I find it important to provide a legal basis for this statement. I therefore direct the parties to *Flanagan v. Arnaiz*, 143 F.3d 540, 544–45 (9th Cir.1998), in which the Ninth Circuit Court of Appeals held that when a federal court retains jurisdiction to resolve disputes arising under a settlement agreement pursuant to *Kokkonen*, such jurisdiction is exclusive in the absence of language to the contrary.