IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

**FILED**
**November 8, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-567

DARRELL WINGETT and CAROL WINGETT,
Plaintiffs Below, Petitioners,

v.

KISHORE K. CHALLA, M.D.,
Defendant Below, Petitioner.

Certified Question from the Circuit Court of Kanawha County
The Honorable Louis Bloom, Judge
Case No. 19-C-479

CERTIFIED QUESTION ANSWERED

Submitted:  October 11, 2023
Filed: November 8, 2023

Andrew D. Byrd, Esq.
WARNER LAW OFFICES, PLLC
Charleston, West Virginia
Counsel for Petitioners
Counsel for Petitioners

Candice M. Harlow, Esq.
Thomas J. Hurney, Jr., Esq.
Blair E. Wessels, Esq.
JACKSON KELLY, PLLC
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.     "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.     "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq.* and *W. Va. Code*, 58-5-2 [(1998)], the statute relating to certified questions from a circuit court of this State to this Court." Syllabus Point 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

3.     "'In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings.' Syl. pt. 1, *Tug Valley Recovery Ctr. v. Mingo Cnty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979)." Syllabus Point 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 266 S.E.2d 905 (1980).

4.     "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999).

i

5.      For purposes of West Virginia Code § 55-7B-9(b) (2016), a healthcare provider named in the complaint and alleged to have contributed to the plaintiff's injuries is an "alleged party," even if that party is later voluntarily dismissed by the plaintiff prior to trial.

6.      "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. W. Va. Pub. Employees Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982).

**WALKER, Chief Justice:**

By certified question, this Court is asked whether parties who are dismissed from an action brought under the Medical Professional Liability Act (MPLA),[1] but who did not settle their claims with the plaintiff may be considered by the jury in apportioning fault under West Virginia Code § 55-7B-9(b) (2016). That provision states that the jury "shall" consider the fault of "all alleged parties." Though not defined, we conclude that the language of the statute and its legislative history compel a conclusion that the term "alleged parties" encompasses those originally named as a party in the complaint as having contributed to the plaintiff's injuries irrespective of whether they remain parties to the litigation at the time of trial. We therefore answer the certified question as reformulated by this Court in the affirmative.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying medical malpractice case arises from the implantation of Mr. Darrell Wingett's permanent pacemaker. In May 2014, Mr. Wingett presented to the Thomas Memorial Hospital emergency room with complaints of dizziness, weakness, and abdominal pain. He was admitted to the hospital and Dr. Kishore Challa, the cardiologist who treated Mr. Wingett, believed Mr. Wingett required a permanent pacemaker due to symptomatic sick sinus syndrome. Dr. Challa did not perform those surgeries, so he

---

[1] W. Va. Code §§ 55-7B-1 to -12.

1

consulted with Dr. M. Salim Ratnani, a cardiothoracic surgeon. Dr. Ratnani also concluded that Mr. Wingett suffered from symptomatic sick sinus syndrome and implanted a permanent pacemaker the following day.

Three years later, Mr. Wingett contracted a MRSA infection that ultimately resulted in surgical removal of the permanent pacemaker. At that point, Mr. Wingett alleges he was advised that the pacemaker was the source of the infection and that it had not been operational since it was implanted in 2014. Mr. Wingett, consistent with the pre-suit notice provisions of the MPLA,[2] sent a timely notice of claim and screening certificate of merit to Dr. Challa, Dr. Ratnani, and their respective practice groups: South Charleston Cardiology Associates (SCCA) and Professional Cardiothoracic Surgery, PLLC (PCS).[3] The notice of claim and screening certificate of merit alleged that Mr. Wingett's symptoms were not appropriately assessed by either physician and that the recommendation of a permanent pacemaker and implantation of that device fell below the standard of care.

On May 10, 2019, Mr. Wingett filed his complaint, naming Dr. Challa, Dr. Ratnani, SCCA, and PCS as defendants. He alleged, consistent with the screening certificate of merit, that a permanent pacemaker was not indicated for Mr. Wingett and that

---

[2] *See* W. Va. Code § 55-7B-6.

[3] The practice groups were included on a theory of vicarious liability. Mr. Wingett later voluntarily dismissed his claim against SCCA. Mr. Wingett's wife was originally a plaintiff in the action, but her claim was also later voluntarily dismissed.

both physicians contributed to his injuries by failing to accurately assess his symptoms and recommending or surgically implanting the permanent pacemaker. Dr. Challa and SCCA answered the complaint in June 2019 and those parties proceeded to the discovery phase. But Mr. Wingett attempted to serve Dr. Ratnani without success and whether service on PCS was perfected is unclear from the record.

Mr. Wingett's counsel advised Dr. Challa's counsel of the service issue with Dr. Ratnani and that a voluntary dismissal of Dr. Ratnani and his practice group may be forthcoming. That information led Dr. Challa to file a notice of non-party fault[4] out of an abundance of caution, without waiving his position that the MPLA still applied to the underlying claim. Mr. Wingett then filed the notice of dismissal, without prejudice,[5] as to Dr. Ratnani and PCS, stating that Dr. Ratnani could not be served because he was believed to be residing in Pakistan, which is not a member of the Hague Convention. The notice of dismissal also alleged that PCS's license to do business in West Virginia had been revoked on November 1, 2016, but did not make any assertions about service of process on that party except to state that no answer or motion for summary judgment had been filed.[6]

---

[4] *See* W. Va. Code § 55-7-13d (2016).

[5] *See* W. Va. R. Civ. P. 41(a).

[6] The civil case information sheet lists service through the Secretary of State.

Finally, Mr. Wingett asserted that Dr. Ratnani and PCS were not necessary parties at the time of the filing of the notice of dismissal.

After expert disclosures and depositions, Mr. Wingett filed a motion in limine to preclude Dr. Challa from arguing, offering into evidence, or eliciting testimony from witnesses that Dr. Ratnani or PCS was responsible for Mr. Wingett's damages. The basis of the motion in limine was that Dr. Challa had served no notice of claim, screening certificate of merit, or third-party complaint against those parties nor had he retained an expert to testify that Dr. Ratnani deviated from the standard of care by recommending and implanting a permanent pacemaker that proximately caused Mr. Wingett's injuries. Stated differently, Mr. Wingett sought to preclude consideration of Dr. Ratnani's contribution to the injuries because Dr. Challa failed to establish an independent medical malpractice case against him. Mr. Wingett's motion in limine further objected to consideration of Dr. Ratnani's medical care pursuant to the non-party fault statute, West Virginia Code § 55-7-13d, suggested that the court could strike the notice of non-party fault pursuant to West Virginia Rule of Civil Procedure 12(f),[7] and moved to change the style of the case to remove Dr. Ratnani and PCS.

In response to the motion in limine, Dr. Challa acknowledged that he did not intend to argue that Dr. Ratnani's care of Mr. Wingett fell below the standard of care. But

---

[7] Mr. Wingett never filed a motion to strike the notice of non-party fault.

he noted the deposition testimony from Mr. Wingett's expert expressing the same opinions as to Dr. Ratnani's care as were expressed in the screening certificate of merit and that, as a cardiothoracic surgeon, Dr. Ratnani should have been fluent in the guidelines for the procedure he performed. Dr. Challa also argued that Dr. Ratnani and PCS were "alleged parties" by virtue of being named by Mr. Wingett in the action and that the MPLA dictates that their fault be considered by the jury.[8]

In pre-trial memoranda, the parties stated that they were unable to reach an agreement as to the jury's consideration of Dr. Ratnani and PCS under either the MPLA or the non-party fault statute. The circuit court entered an order stating that it was initially inclined to deny Mr. Wingett's motion in limine but agreed to certify the question to this Court and to continue the trial pending an answer. The certification order asks, "[s]hould the jury be allowed to consider the fault of a party who was originally named as a defendant but voluntarily dismissed by the plaintiff pursuant to either West Virginia Code § 55-7B-9, West Virginia Code § 55-[7]-13c, and/or West Virginia Code § 55-7-13d under the specific facts set forth in the instant case?" The circuit court submitted findings of fact and conclusions of law answering that question in the affirmative. This Court accepted the certified question by order dated February 27, 2023, and set the matter for oral argument.

---

[8] *See* W. Va. Code § 55-7B-9(b) ("[t]he trier of fact shall, in assessing percentages of fault, consider the fault of all alleged parties, including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury.").

## II.    STANDARD OF REVIEW

Certified questions addressed by this Court are given plenary review: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."[9]

## III.    ANALYSIS

Questions certified from a circuit court may be reformulated as necessary to address the full scope of the legal issues underlying the question:

> When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq.* and *W. Va. Code*, 58-5-2 [(1998)], the statute relating to certified questions from a circuit court of this State to this Court.[10]

Limiting the scope of a certified question is also within this Court's authority: "[w]e have traditionally maintained that upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered."[11] Certified questions can

---

[9] Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

[10] Syl. Pt. 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

[11] *Cty. of Fairmont v. Retail, Wholesale, and Dept. Store Union, AFL-CIO*, 166 W. Va. 1, 3-4, 283 S.E.2d 589, 590 (1980).

and should be reformulated or refused to avoid issuing advisory opinions.[12]

Because the question posed by the circuit court is in the alternative and we conclude that Dr. Ratnani and PCS are "alleged parties" under West Virginia Code § 55-7B-9(b), we need not and do not decide whether they may also be considered as "non-parties" for purposes of West Virginia Code § 55-7-13d. We therefore exercise our authority to reformulate the question to whether a healthcare provider who was named in the complaint but voluntarily dismissed as a party is an "alleged party" for purposes of West Virginia Code § 55-7B-9(b) and answer that question in the affirmative.

West Virginia Code § 55-7B-9(b) of the MPLA provides that "[t]he trier of fact shall, in assessing percentages of fault, consider the fault of all alleged parties, including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury."[13] Dr. Challa argues that because Dr. Ratnani and PCS were named as parties in the complaint they satisfy the definition of "alleged parties" and the statute requires that their fault be considered by the jury. Mr. Wingett, conversely, would have us read West Virginia Code § 55-7B-9(b) as creating *only* two distinct categories of

---

[12] *See State ex rel. Advance Stores Co., Inc. v. Recht*, 230 W. Va. 464, 469-70, 740 S.E.2d 59, 64-65 (2013) (discussing requirement that answer to certified question be determinative of issue pending in certifying court and not advisory). *See also Huston v. Mercedes-Benz USA, LLC*, 227 W. Va. 515, 523-24, 711 S.E.2d 585, 593-94 (2011) (declining to answer second certified question as advisory given answer to first certified question).

[13] The parties do not dispute that the 2016 version of the MPLA applies.

7

those whose fault may be considered by the jury by operation of this provision: (1) party-defendants and (2) settling parties. Mr. Wingett argues that Dr. Ratnani and PCS do not fit into either category because they were dismissed from the action and did not settle.

We begin and end our analysis of this certified question with the meaning of "alleged parties" as ascertained by the language of the statute: "courts should give effect to the legislative will as expressed in the language of the statute."[14] "Alleged parties" is not defined under the MPLA, nor does that term exist elsewhere in the West Virginia Code. Where a definition is not legislatively provided, we presume that the Legislature intended the term to have its common usage: "in the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings."[15] Parsing out the individual words, "alleged" means "[a]sserted to be true as described" or "accused but not yet tried"[16] and "party" means "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment."[17]

---

[14] *Donley v. Bracken*, 192 W. Va. 383, 387, 452 S.E.2d 699, 703 (1994).

[15] Syl. Pt. 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 266 S.E.2d 905 (1980) (quoting Syl. Pt. 1, *Tug Valley Recovery Ctr. v. Mingo Cnty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979)).

[16] *Alleged*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[17] *Party*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Applying the common meaning of these words, and for the reasons explained below, we conclude that Dr. Ratnani and PCS are "alleged parties" under West Virginia Code § 55-7B-9(b) because they were named by Mr. Wingett as parties in the complaint.[18] That they were later dismissed at the election of Mr. Wingett does not alter that Mr. Wingett alleged, by verified complaint, that they contributed to his injuries. Contrary to Mr. Wingett's assertions, West Virginia Code § 55-7B-9(b) does not require that the alleged tortfeasor either be in the litigation at the time of trial or have previously settled in order to qualify as an "alleged party" under that provision. Both the legislative history and the text of the statute itself belie that conclusion.

To be sure, "alleged parties" is a term that occupies a grey area of party status: one is typically a party or a non-party. But the Legislature's inclusion of the word "alleged" to modify "parties" must be given effect in applying West Virginia Code § 55-7B-9(b): "[a] cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute."[19] And, "[i]t is a well known rule of statutory construction that the Legislature is presumed to intend that

---

[18] In *State ex rel. Chalifoux v. Cramer*, No. 20-0929, 2021 WL 2420196 (W. Va. June 14, 2021 (memorandum decision), this Court was presented with a petition for a writ of prohibition relative to placing non-party healthcare providers on the verdict form and grappled with the term "alleged parties." As the circuit court below recognized, that case is of little moment here due to its procedural posture and factual distinctions.

[19] Syl. Pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999).

every word used in a statute has a specific purpose and meaning."[20]  A "party" cannot be coextensive with the meaning of an "alleged party" if we are to give effect to the Legislature's use of "alleged."

We know this for two reasons.  First, as discussed, the Legislature chose to modify the word "party" with "alleged," necessarily broadening the scope beyond those parties in the action at the time of trial.  Second, the Legislature also chose to list, by way of example, that "alleged parties" would "include" "any person who has settled a claim with the plaintiff arising out of the same medical injury."  As a non-exhaustive list, we cannot conclude that "alleged parties" has so exclusive a definition that Dr. Ratnani and PCS, who were named in the complaint and voluntarily dismissed by the plaintiff, would not qualify.

The legislative history of this statute clarifies that "alleged parties" encompasses more than those defendants still in the action at the time of trial.  The original version of the statute, enacted in 1986, spoke in terms of "defendants," and this Court applied it in that manner, rejecting the jury's consideration of non-party tortfeasors where the Legislature's express terms did not provide for "potential defendants."[21]  In 2003, the

---

[20] *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979).

[21] *See Rowe v. Sisters of Pallottine Missionary Society*, 211 W. Va. 16, 25, 560 S.E.2d 491, 500 (2001).

10

defendant-specific language in this code provision was amended, permitting the jury to consider "only the fault of the parties in the litigation at the time the verdict is rendered" and specifically disallowed consideration of the fault of any other person who settled a claim with the plaintiff arising out of the same medical injury.[22] But fault of "alleged parties," including those who settled a claim with the plaintiff, could be considered by the jury upon creation of the Patient Injury Compensation Fund.[23]

After that fund was established, the Legislature, in 2016, struck the language mandating the jury consider the "fault of the parties in the litigation at the time the verdict was rendered" in favor of the current version, which provides that the jury shall consider the fault of *all alleged parties*. Stated more succinctly, throughout the development of the provision at issue, the Legislature has evinced a clear intent to progress away from "defendants" and "parties in the litigation at the time the verdict is rendered" toward the current and most expansive "alleged parties," "including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury." We therefore reject Mr. Wingett's contention that because Dr. Ratnani and PCS were dismissed as parties before trial that they may not be considered "alleged parties."

---

[22] W. Va. Code § 55-7B-9(b) (2003).

[23] *Id. See also Chalifoux*, 2021 WL 2420196 at *8-10 (Armstead, J., dissenting) (discussing creation and purpose of Patient Injury Compensation Fund).

11

That the Legislature gave some instruction as to what it would consider an "alleged party" by way of non-exhaustive list is as informative as the legislative history. Specifically, the Legislature has deemed an "alleged party" as "including" any person who has settled a claim with the plaintiff arising out of the same medical injury. But not all tortfeasors who settle a claim with the plaintiff are, or ever were, "parties," so it makes little sense to draw the line of "alleged parties" there. In fact, the MPLA, through its pre-suit notice requirements, encourages the settlement of cases before a complaint is filed – that is, *before* they can be made parties.[24]

We have observed that "[t]he term 'includ[ing]' in a statute is to be dealt with as a word of enlargement"[25] and indicative of a partial list:

> *Black's Law Dictionary* (9th Ed.2009) defines the term "include" as "to contain as a part of something," and says that the term "typically indicates a partial list . . . But some drafters use phrases such as *including without limitation* and *including but not limited to*—which mean the same thing."[26]

The Legislature, in using the word "including," thus demonstrates that it did not intend to create *only* two distinct categories of "alleged parties" (party-defendants and those who

---

[24] *See* W. Va. Code § 55-7B-6.

[25] *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 684, 671 S.E.2d 682, 689 (2008) (quotations and citations omitted).

[26] *Postlewait v. Cty. of Wheeling*, 231 W. Va. 1, 4, 743 S.E.2d 309, 312 (2012).

12

settled with the plaintiff before trial) because the enumerated category is a partial list of who may be considered an "alleged party."

It follows that, in the context of the MPLA, "alleged parties" must embrace, at minimum, those alleged tortfeasors who were named in the complaint by plaintiff. We reject Mr. Wingett's contention that because Dr. Ratnani and PCS were dismissed as parties they necessarily cannot be "alleged parties," when, in fact, that is precisely the sort of factual scenario the common meaning of that term appears to contemplate. The legislative history and language of the statute cannot support the restrictive definition Mr. Wingett advocates. We therefore hold that for purposes of West Virginia Code § 55-7B-9(b) (2016), a healthcare provider named in the complaint and alleged to have contributed to the plaintiff's injuries is an "alleged party," even if that party is later voluntarily dismissed by the plaintiff prior to trial.

Because West Virginia Code § 55-7B-9(b) dictates that "[t]he trier of fact *shall*, in assessing percentages of fault, consider the fault of all alleged parties"[27] the jury must be permitted to consider whether, as plaintiff alleged, Dr. Ratnani and PCS were at fault for Mr. Wingett's injuries: "[i]t is well established that the word 'shall,' in the absence

---

[27] Emphasis added.

13

of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."[28]

Corollary to that conclusion is the question it begs: who must do the alleging to make a would-be tortfeasor an "alleged party"? Mr. Wingett insists that because Dr. Challa has not laid blame for Mr. Wingett's injuries at the feet of Dr. Ratnani either by third-party practice or expert testimony, there are no "allegations" to make Dr. Ratnani or PCS an "alleged party." Stated differently, Mr. Wingett contends that the definition of "alleged party" requires *Dr. Challa* to allege Dr. Ratnani's treatment of Mr. Wingett fell below the standard of care. But nothing in the statute requires a third-party complaint or expert testimony offered by a defendant against an "alleged party" to qualify them as such.[29] Mr. Wingett's contention that Dr. Challa needed to serve a notice of claim and

[28] Syl. Pt. 1, *Nelson v. W. Va. Pub. Employees Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982).

[29] This Court requested briefing on the impact of this Court's recent syllabus point in *W.W. Consultants v. Pocahontas County Public Service District*, 248 W. Va. 323, 888 S.E.2d 823 (2023), which provides that "[t]he statutory scheme and exceptions set forth in West Virginia Code §§ 55-7-13a to -13d govern contribution claims. The unambiguous language of those statutes abolished any contribution claim that falls outside of them."

Mr. Wingett relies on the availability of third-party practice as a remedy of which Dr. Challa has not availed himself while simultaneously arguing that MPLA defendants are precluded from invoking the provisions for fault allocation that, pursuant to this Court's holding in *W.W. Consultants*, purport to occupy the field of third-party practice. In their supplemental briefing, both parties contend this syllabus point has no bearing on the answer to the certified question posed to this Court. Inasmuch as we have reformulated that certified question as limited to West Virginia Code § 55-7B-9(b), we agree and do not intend our recitation of Mr. Wingett's argument to suggest the availability, or not, of a contribution claim.

14

screening certificate of merit on Dr. Ratnani and PCS before the jury could consider whether they may have contributed to Mr. Wingett's injuries rests on the faulty premise that Dr. Ratnani and PCS are being *sued* by Dr. Challa, when the operation of the statute he invokes is merely for the jury to apportion their fault, if any, in relation to his.[30]

Here, the "allegations" were supplied by the plaintiff through his verified complaint. This is consistent with consideration of fault of settling defendants or those who settled prior to becoming a party. Allegations tendered by the plaintiff are sufficient there; we see no reason to draw a distinction here where none exists in the statute. To hold otherwise puts Dr. Challa in the untenable position of criticizing Dr. Ratnani for recommending the same course of treatment that he himself recommended before Dr. Ratnani may be considered by the jury to be totally, partially, or not at all at fault. For those reasons, we disagree that Dr. Challa had to either file a third-party complaint or offer expert testimony critical of Dr. Ratnani's care before Dr. Ratnani and PCS may be considered "alleged parties" for purposes of West Virginia Code § 55-7B-9(b).

---

[30] *See* W. Va. Code § 55-7B-6 ("[N]o person may *file a professional liability action* against any health care provider without complying with [pre-suit notice provisions].") (emphasis added). The parties' arguments relative to an evidentiary burden, expert testimony, and the sufficiency of the aspersions cast upon Dr. Ratnani's treatment of Mr. Wingett are beyond the scope of this certified question where we are concerned only with whether Dr. Ratnani and PCS are "alleged parties" such that the statute would permit consideration of their fault in the first place.

## IV. CONCLUSION

The reformulated certified question asked: whether a healthcare provider who was named in the complaint but voluntarily dismissed as a party is an "alleged party" for purposes of West Virginia Code § 55-7B-9(b)? Having answered the reformulated certified question in the affirmative, we remand this case to the Circuit Court of Kanawha County for further proceedings.

Certified question answered.