PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

|  |  |
|---|---|
| ANTOINETTE M. MARINO, *Party in Interest-Appellant,* v. PIONEER EDSEL SALES, INCORPORATED; CLUTTER MOTOR SALES, INCORPORATED; RICKY CLUTTER, *Defendants-Appellees.* | No. 02-2149 |

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-95-1069-MDL, CA-95-2716, CA-00-991-JFM)

Argued: September 23, 2003

Decided: November 17, 2003

Before TRAXLER and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge Traxler and Judge King joined.

---

## COUNSEL

**ARGUED:** Erwin Chemerinsky, UNIVERSITY OF SOUTHERN CALIFORNIA LAW SCHOOL, Los Angeles, California, for Appellant. James Patrick Ulwick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Patricia A. Moore,

LAW OFFICES OF PATRICIA A. MOORE, Torrance, California, for Appellant. Robin G. Workman, QUALLS & WORKMAN, L.L.P., San Francisco, California, for Appellees.

## OPINION

HAMILTON, Senior Circuit Judge:

Plaintiff-Appellant, Antionette Marino (Marino), appeals from a district court order holding that Marino was not entitled to any attorney's fees for work she allegedly performed for Defendants-Appellees, Pioneer Edsel Sales, Inc., Clutter Motor Sales, Inc., and Ricky Clutter (collectively referred to as Pioneer Honda), in a class action lawsuit against American Honda Motor Company, Inc. (American Honda). We affirm.

I

In 1995, Honda dealers around the country began suing American Honda in federal courts alleging violations of, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* One of these lawsuits was a class action. In the summer of 1995, the Judicial Panel on Multi-District Litigation consolidated those cases for pre-trial purposes and transferred them to the United States District Court for the District of Maryland. Judge Motz was assigned to the cases.

In a January 1998 order, Judge Motz certified a limited liability class for trial in the Honda class action (the Honda Class Action). Pioneer Honda was a class representative. The January 1998 order contemplated a "Phase I," where all liability claims by the Honda dealers would be tried against American Honda. The order required, however, that each Honda dealership individually prove its damages. (J.A. 146). Thus, every plaintiff in the Honda Class Action, including representative plaintiffs such as Pioneer Honda, expected to individually try its damages case in a "Phase III" proceeding. (J.A. 146).

Sometime shortly after Judge Motz's certification decision, it came to the attention of Elizabeth Graham, Esquire, of the law firm of

Rapazzini & Graham, that American Honda was attempting to settle the claims of Pioneer Honda by agreement with the dealership's new owner, Ricky Clutter (Clutter). Until that time, the former owners of Pioneer Honda, Al Reilly (Reilly) and Mildred Radar (Radar), who were represented by Rapazzini & Graham, had been actively prosecuting the claims pursuant to an alleged oral agreement with Clutter.

On February 19, 1998, Graham contacted Marino, who was Clutter and Pioneer Honda's counsel at the time, and asked for an assignment of rights from Clutter to Reilly and Radar ostensibly in exchange for a referral fee. In a subsequent conversation, Graham told Marino that she was representing other individual dealers in the Honda Class Action and was interested in representing Clutter. Marino and Graham ultimately convinced Clutter to reject American Honda's $325,000 settlement offer (which at one time Clutter and Marino were inclined to accept) and to prosecute Pioneer Honda's claims through Graham.

To avoid a dispute between the current and former owners, Clutter agreed to work with Reilly and Radar and share the proceeds of any recovery from American Honda in the Honda Class Action. Thereafter, Rapazzini & Graham and Clutter entered into an "Attorney Representation Agreement." (J.A. 987).

Marino is not a party to the Attorney Representation Agreement, but it reflects her status at that time as Clutter's personal counsel. Paragraph 5 of the Attorney Representation Agreement provides as follows: "Attorneys shall act as co-counsel with my personal attorney, Antoinette Marino, Esq. This shall not increase the Attorneys' fees set forth herein." (J.A. 988). Paragraph 4 of the Attorney Representation Agreement provides for a graduated contingent fee to be paid to Rapazzini & Graham based upon Rapazzini & Graham's representation of Clutter "on an individual basis." (J.A. 987). The Attorney Representation Agreement contemplated that Marino could be required to perform work on Clutter's behalf should the case be tried individually and provided that Marino would receive "30% of the total attorneys' fees provided for in paragraph 4 or some other fair percentage." (J.A. 988).

In an April 6, 1998 letter that Marino sent to Clutter, Marino explained the Attorney Representation Agreement to Clutter. Marino

explained that she would receive thirty percent of the attorney's fees paid to Rapazzini & Graham. Marino also promised that "[t]he 30% shall in no way increase the attorney's fees for which the client, Pioneer Edsel Sales, agrees to pay Rapazzini & Graham (paragraph 4 of the Attorney [Representation] Agreement)." (J.A. 1680). On April 15, 1998, Marino filed a notice of appearance in an action related to the Honda Class Action that was pending in the District of Maryland. This action, which was brought by Pioneer Honda against two fellow California Honda dealerships and was transferred to the District of Maryland as part of the America Honda multi-district litigation, alleged, *inter alia*, that the dealerships along with American Honda violated RICO.

In June 1998, American Honda approached Rapazzini & Graham, who by then had been appointed class counsel, about the possibility of a global settlement. A class action settlement (the Borman Settlement Agreement) was negotiated in July 1998 and all proceedings were stayed pending a fairness hearing. An econometric model was developed and a formula was devised to distribute any settlement proceeds to the entire settlement class of Honda dealers. Thus, the class-wide damages settlement eliminated the need for any dealership, including Pioneer Honda, to prove damages individually. Each class member needed only to elect to remain in the class to receive a recovery under the plan of distribution. According to Rapazzini & Graham, this event rendered nugatory all individual contingent fee contracts with Rapazzini & Graham, and Rapazzini & Graham notified each class representative of that fact and the amount that they could expect to receive from the global settlement.

Of note, in so approving the Borman Settlement Agreement, Judge Motz expressly found that the total amount of settlement to be paid to the plaintiffs' class under the Borman Settlement Agreement was fair, reasonable, adequate, and in the best interests of the class as a whole. Paragraph 19 of the Borman Settlement Agreement states that Judge Motz "shall have exclusive and continuing jurisdiction" over all disputes arising from or relating to the Borman Settlement Agreement, including disputes concerning attorney's fees. (J.A. 1261). Moreover, the October 9, 1998 Order of Final Settlement Approval states that the "Court shall have and retain exclusive jurisdiction with

respect to . . . any applications or disputes concerning attorney's fees . . . which may arise." (J.A. 1275-76).

As a result of the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval, no contingent fee or attorney's fees were paid to Rapazzini & Graham under the Attorney Representation Agreement. Moreover, no fees or costs were paid to Rapazzini & Graham pursuant to any individual fee contract once global negotiations began. Rapazzini & Graham were paid as class counsel pursuant to their application to Judge Motz. The record reflects that, as class counsel, Rapazzini & Graham were paid approximately twenty million dollars pursuant to the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval. Pioneer Honda's recovery under the plan of distribution was approximately two million dollars: Clutter received approximately two-thirds of that sum, with the balance being paid to the former owners of Pioneer Honda. According to Marino, she was not paid, by Rapazzini & Graham or Pioneer Honda, for the approximately 400 hours of legal work she performed in connection with the prosecution of Pioneer Honda's claims against American Honda.

In June 2000, Marino filed an action against Rapazzini & Graham in California state court asserting numerous claims including fraud and breach of contract. In essence, Marino sought to recover thirty percent of the attorney's fees Rapazzini & Graham received for the representation of Pioneer Honda's interests in the Honda Class Action.

Thereafter, Rapazzini & Graham filed a motion before Judge Motz entitled "Motion for Adjudication of Fee Dispute Pursuant to the Borman Settlement Agreement ¶ 19 and Request for Reasonable Attorneys' fees Pursuant to ¶ 19.3." (J.A. 267). Rapazzini & Graham simultaneously removed Marino's state court action to the United States District Court for the Central District of California. Marino filed a motion for remand. The Judicial Panel on Multi-District Litigation then transferred the case to the United States District Court for the District of Maryland.

Judge Motz initially ruled that he possessed jurisdiction to decide Marino's claims against Rapazzini & Graham and went on to rule that

Marino's claims were without merit. Judge Motz held that Marino was not entitled to fees under the Attorney Representation Agreement because it was rendered nugatory once class counsel, Rapazzini & Graham, began negotiating the global settlement. Moreover, Judge Motz found that no individual representation of, *inter alia*, Pioneer Honda, ever occurred since the global settlement was entered into before any individual proceedings took place. Finally, Judge Motz held that Marino was not entitled to class fees since there was no evidence that she did any work for the class in the Honda Class Action. No final judgment was entered because the parties settled the case, with Marino waiving her right to appeal in exchange for a waiver of costs.

Approximately three months after Judge Motz rejected Marino's claims against Rapazzini & Graham, Marino filed an action against Pioneer Honda in California state court asserting claims for breach of contract, fraud, and *quantum meruit*. In her broadly-worded state court complaint against Pioneer Honda, Marino, for the most part, sought to recover attorney's fees from Pioneer Honda for the work she asserted she performed in the Honda Class Action, although the complaint can be construed to include a component for attorney's fees for work unrelated to the Honda Class Action. After Marino filed this action against Pioneer Honda, Pioneer Honda removed the action to the United States District Court for the Central District of California.

The district court for the Central District of California *sua sponte* issued an order to show cause and requested Pioneer Honda to establish why the California federal district court had jurisdiction over the matter. In its ruling remanding the case to state court, the California district court stated:

> Defendants argue that the appropriate procedural mechanism to have Judge Motz hear this case is to remove to federal court and then have it transferred to Judge Motz through the MDL panel. But Defendants have not explained how this court, as opposed to Judge Motz, has jurisdiction to hear this case in the first instance. While the only proper forum for this dispute may well be in front of Judge Motz, Defendants are free to assert such a defense in state court. But the exis-

tence of that defense does not make this case arise under federal law.

Because Defendants have failed to carry their burden to demonstrate how subject matter jurisdiction exists in this case, we hereby REMAND the case to state court.

(J.A. 1009-10).

On January 12, 2001, Pioneer Honda filed a motion before Judge Motz requesting that he determine if Marino was entitled to any attorney's fees from Pioneer Honda for any work she asserted she performed in the Honda Class Action. Pioneer Honda filed this motion pursuant to the dictates of Paragraph 19 of the Borman Settlement Agreement and Judge Motz's October 9, 1998 Order of Final Settlement Approval. At approximately the same time, Pioneer Honda filed a motion to stay and/or dismiss Marino's action against Pioneer Honda pending in California state court. In that motion, Pioneer Honda argued that the only forum to decide Marino's claim for attorney's fees for work she allegedly performed in the Honda Class Action was the United States District Court for the District of Maryland. Ultimately, very little took place in state court because the parties proceeded with the matter before Judge Motz. Judge Motz preliminarily ruled that he had jurisdiction over Marino's claims for attorney's fees earned in connection with the Honda Class Action, but requested further briefing on the nature of the claims.

On July 18, 2001, Judge Motz held a hearing. Judge Motz held that he, as the district judge supervising the Honda Class Action, did have jurisdiction over Marino's claims for attorney's fees earned in connection with the Honda Class Action. Following a hiatus at the parties' request to pursue mediation, the parties returned to Judge Motz and agreed to present the matter for his determination, non-jury, on the basis of written submissions. A briefing schedule was set up and a hearing was set for August 28, 2002. Marino fully participated in this procedure up to and including filing a sur-reply trial brief. Two days before the August 28, 2002 hearing, Marino's counsel notified Judge Motz that neither Marino nor her counsel would participate in the August 28, 2002 hearing.

Marino then petitioned this court for a writ of mandamus prohibiting Judge Motz from holding the August 28, 2002 hearing. Judge Motz advised Marino's counsel that he was proceeding with the hearing unless this court issued the writ of mandamus. This court declined to intervene and the hearing before Judge Motz was held as scheduled. Judge Motz ultimately ruled again that he did have jurisdiction over Marino's claims for attorney's fees earned in connection with the Honda Class Action and then turned to the merits. Finding that Marino's claims for attorney's fees were based on a contract which had been voided by virtue of the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval, and finding that Marino did no compensable work on behalf of the class, Judge Motz ruled that Marino was not entitled to attorney's fees for work she allegedly performed on behalf of Pioneer Honda in connection with the Honda Class Action. In his ruling, Judge Motz stated that he made no decision as to any other claims that Marino may, or may not, have against Pioneer Honda. A final order was entered by the district court the following day. Marino noted a timely appeal.

II

On appeal, Marino contends that Judge Motz did not have jurisdiction over Pioneer Honda's January 12, 2001 motion, filed in the United States District Court for the District of Maryland, requesting that Judge Motz determine if Marino was entitled to any attorney's fees from Pioneer Honda for work she allegedly performed in connection with the Honda Class Action. The gist of Marino's argument is that Judge Motz improperly *removed* Marino's action pending in California state court to the United States District Court for the District of Maryland. In response, Pioneer Honda claims that Judge Motz had continuing jurisdiction under the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval to resolve any claim for attorney's fees performed in connection with the Honda Class Action.

It is well-settled that a federal court may exercise ancillary jurisdiction to enforce its judgments. *Peacock v. Thomas*, 516 U.S. 349, 354 (1996); *see also* 28 U.S.C. § 1367(a) ("[I]n any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action . . . that they form part of the same case and controversy."). While a federal court has the power to retain jurisdiction to enforce its decision, the Supreme Court has cautioned against the exercise of ancillary jurisdiction "over proceedings that are entirely new and original." *Peacock*, 516 U.S. at 358 (citation and internal quotation marks omitted). Indeed, ancillary jurisdiction "may extend to claims having a factual and logical dependence on the primary lawsuit, . . . but that primary lawsuit must contain an independent basis for federal jurisdiction." *Id.* at 355 (citation and internal quotation marks omitted). The *Peacock* Court reasoned that, while a proper exercise of enforcement jurisdiction will result in efficiencies which outweigh comity concerns, an exercise of enforcement jurisdiction over a factually independent proceeding has no practical benefit for judicial economy. *Id.*

In *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994), the Supreme Court explained that "[e]nforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378. In so holding, the *Kokkonen* Court found that the exercise of ancillary jurisdiction over a mere breach of a settlement agreement would further neither of the purposes for which the Court had exercised ancillary jurisdiction in the past: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . .; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80. The Court did observe, however, that a district court's ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees" provides such an independent jurisdictional basis to enforce a settlement agreement if "the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal." *Id.* at 381. The Court specified two ways in which a court may make a settlement agreement part of its dismissal order: "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.*[1]

---

[1]The *Kokkonen* Court made clear that a district court may have ancillary jurisdiction to enforce a settlement agreement even where the previ-

In this case, Judge Motz unquestionably had jurisdiction over Marino's claim that she was entitled to attorney's fees from Pioneer Honda for work she allegedly performed in connection with the Honda Class Action. The October 9, 1998 Order of Final Settlement Approval states that the "Court shall have and retain exclusive jurisdiction with respect to . . . any applications or disputes concerning attorney's fees . . . which may arise." (J.A. 1275-76). Marino's claim that she was entitled to attorney's fees from Pioneer Honda for work she performed in connection with the Honda Class Action is clearly an attorney's fees dispute arising from the Honda Class Action and, therefore, it was incumbent upon Judge Motz to resolve the dispute.

In reaching this conclusion, we note that both purposes for which the Supreme Court has exercised ancillary jurisdiction in the past are met in this case. Marino's claims are factually interdependent with other issues in the Honda Class Action because the amount of attorney's fees paid for work done in connection with the Honda Class Action can effect the fairness and reasonableness of the class action settlement as a whole. More importantly, though, preventing Judge Motz from deciding whether Marino is entitled to attorney's fees for work she allegedly performed in connection with the Honda Class Action would thwart Judge Motz's ability to manage the Honda Class Action. To be sure, in a class action, whether the attorney's fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorney's fees are fair and proper. Thus, when a dispute concerning attorney's fees arises, the district court must have continuing jurisdiction to resolve the dispute in order to protect the continued integrity of its order approving fair and reasonable fees in the first instance. Moreover, just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute

---

ous dismissal was not effected by court order, but rather by the filing of a stipulation of dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). *Kokkonen*, 511 U.S. at 381-82. The Court noted that, even though Rule 41(a)(1)(ii) "does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal," the district court has the authority to make a settlement agreement part of its dismissal order "if the parties agree." *Id.* at 382.

resolution process. These are the very reasons the parties in the Honda Class Action provided for continuing jurisdiction in the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval.

Finally, we make two additional observations. First, we observe that our decision is consistent with our recent decision in *In re American Honda Motor Company, Inc.*, 315 F.3d 417 (4th Cir.), *cert. denied*, 71 U.S.L.W. 3736 (U.S. October 6, 2003). In that case, Judge Motz entered an injunction forbidding the plaintiffs from enforcing a favorable arbitration award, where that award resulted from the plaintiffs' arguing to the arbitrator that they had not been compensated adequately by the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval. *Id.* at 432-36. According to the plaintiffs, they were entitled to over seven million dollars in blue sky damages that they would have received if their case had been properly handled by one of their former attorneys. *Id.* at 432. Because this argument required the arbitrator to interpret the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval, we held that the district court had jurisdiction pursuant to the All Writs Act and that an injunction enjoining a state court action was not prohibited by the Anti-Injunction Act because the injunction was necessary to prevent the direct frustration of the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval. *Id.* at 437-42.

Like *In re American Honda Motor Company, Inc.*, this case required Judge Motz to interpret the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval. In interpreting the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval, Judge Motz determined that they rendered nugatory the Attorney Representation Agreement. Obviously, preventing Judge Motz from interpreting the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval would result in the direct frustration of the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval. To be sure, a conclusion that Judge Motz erred in assuming jurisdiction could lead to conflicting results across the country. For example, the state court in California in this case could hold that the Borman Settlement Agreement and the October 9, 1998 Order of

Final Settlement Approval does not render nugatory the Attorney Representation Agreement. However, another state court confronted with the same facts could hold that the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval does trump an agreement similar to the Attorney Representation Agreement. Because conflicting results could occur across the country, it makes intuitive sense to conclude that Judge Motz appropriately assumed jurisdiction in this case.

Second, we observe that Judge Motz did not countermand the California federal district court's remand order when Judge Motz ruled on Pioneer Honda's January 12, 2001 motion requesting that he determine whether Marino was entitled to any attorney's fees from Pioneer Honda because Marino's California state court action was *never removed* to the United States District Court for the District of Maryland. Indeed, the California state court action remains in state court at this time. Simply put, Pioneer Honda brought an independent motion to Judge Motz pursuant to the dictates of the Borman Settlement Agreement and the October 9, 1998 Order of Final Settlement Approval. The only issue presented to Judge Motz pursuant to this motion was whether Marino was entitled to recover any attorney's fees for work she allegedly performed in the Honda Class Action. Judge Motz made it clear that the only issue he decided was Marino's entitlement to such fees. Judge Motz stated that he made no decision as to any other claims that Marino may, or may not, have against Pioneer Honda. If Marino has additional claims to bring against Pioneer Honda, other than those for attorney's fees for work she allegedly performed in the Honda Class Action, Marino obviously can pursue those claims in California state court or in other appropriate jurisdictions.[2]

---

[2]We note that Marino's reliance on the Supreme Court's decision in *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002), is misplaced. In *Syngenta Crop Protection, Inc.*, the Court reaffirmed the well-settled principle that neither the All Writs Act nor the doctrine of ancillary jurisdiction can confer subject matter jurisdiction in its own right. *Id.* at 33-34. Unlike *Syngenta Crop Protection, Inc.*, in this case, there is no question that the district court had jurisdiction to decide whether an attorney was entitled to attorney's fees for work allegedly performed in the Honda Class Action. Thus, the doctrine of ancillary jurisdiction merely authorized the district court in this case to decide an issue over which it already had jurisdiction.

In sum, we harbor no doubt that Judge Motz had jurisdiction to decide whether Marino was entitled to any attorney's fees from Pioneer Honda for work she allegedly performed in the Honda Class Action.

## III

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*