**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 25-1657**

───────────────

TONY A. MESSER; KEVIN N. MUMPOWER; JANICE L. BOOHER; PATRICIA C. EADS; PHILIP E. BARBROW; BENJIE G. HICKS; KENDALL W. LUTTRELL; DARRELL G. MURRAY; DAVID A. STOVALL; DENNIS J. STILTNER; TIMOTHY M. WAMPLER; MICHAEL L. PARKER; CHARLES E. VESTAL; JIMMY AMBERGEY; DAVE S. BOOHER; LARRY RICHARDS, on behalf of themselves and on behalf of others similarly situated,

                    Plaintiffs - Appellants,

       v.

GARRISON INVESTMENT GROUP, LP; JOSEPH B. TANSEY; STEVEN SCOTT STUART; GIG GP LLC; JTSS BORROWER LLC; JOSHUA BRANDT; JULIAN WELDON; BRIAN STEVEN CHASE; GARRISON SPECIAL OPPORTUNITIES GP LLC; GARRISON COMMERCIAL FUNDING VIII LLC; GARRISON FINANCIAL ASSETS MM LLC; GARRISON SPECIAL OPPORTUNITIES HOLDINGS GP LLC; BCPI ACQUISITIONS, INC; GARRISON BRISTOL LLC; GARRISON BRISTOL HOLDINGS LLC,

                 Defendants - Appellees.

───────────────

Appeal from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, Senior District Judge. (1:24-cv-00037-JPJ-PMS)

───────────────

Argued: March 17, 2026                               Decided: May 26, 2026

───────────────

Before KING, GREGORY, and THACKER, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge King and Judge Gregory joined.

————————————

Mary Lynn Tate, TATE LAW P.C., Abingdon, Virginia, for Appellants.  Mark Hunter Churchill, HOLLAND & KNIGHT LLP, Tysons, Virginia, for Appellees.

————————————

THACKER, Circuit Judge:

Following a bench trial, Appellants, former employees of Bristol Compressors International, LLC ("BCI"), obtained a class action money judgment against BCI for violations of the Worker Adjustment and Retraining Notification Act of 1988 ("the Warn Act") and the Employee Retirement Income Security Act ("ERISA"). When efforts to collect the judgment from BCI failed, the former employees pivoted and filed this action seeking to enforce the BCI judgment against Garrison Investment Group, LP ("Garrison") -- a party they voluntarily dismissed from the suit against BCI.

The district court concluded that it lacked subject matter jurisdiction because the complaint sought to enforce the previous judgment against a party that was never found liable for the WARN Act and ERISA violations, and the complaint lacked an independent jurisdictional basis. Therefore, the district court dismissed the lawsuit.

The district court was correct to dismiss the complaint for lack of subject matter jurisdiction. Accordingly, we affirm.

I.

A.

The Underlying Class Action Lawsuit -- *Messer I*

Appellants worked at a BCI manufacturing facility in Bristol, Virgina. On July 1, 2018, BCI announced that it was going to cease operations and close "by or about August 31, 2018," and that employment terminations would commence immediately. J.A. 25.[1]

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

The first wave of terminations took place between July 31 and August 2, 2018. Terminations continued throughout September and November, and the facility ultimately closed on or about November 16, 2018.

On October 19, 2018, Appellants filed a class action lawsuit on behalf of themselves and others similarly situated, against BCI and Garrison, as the alter ego and successor of BCI. *Messer, et al. v. Bristol Compressors International, LLC*, No. 1:18-CV-00040 (W.D. Va.) ("*Messer I*"). Appellants alleged in their complaint that BCI did not comply with the WARN Act because it did not provide sufficient notice to the employees of the plant before it closed, and that BCI failed to validly terminate the employee severance plan in violation of ERISA. Appellants also named Garrison as a defendant. They alleged that Garrison was a jointly liable alter ego and successor of BCI because Garrison "acquired an interest in [BCI] and participated in or directed its recent operations including the structure and sequence of closing the plant and employee termination." J.A. 193. Therefore, Appellants alleged that BCI and Garrison were liable as a single employer pursuant to the WARN Act. In support of this theory, Appellants claimed that BCI and Garrison each "participated in and [were] responsible for implementing the plant closing structure and management decisions that form the basis of the instant action." *Id.*

The district court certified three sub-classes of former BCI employees. After completion of discovery, Garrison moved for summary judgment on Appellants' single employer theory of WARN Act liability, arguing that Garrison cannot be deemed vicariously liable for the decisions of BCI. In addition to Garrison's motion for summary judgment, BCI and Garrison filed a number of other joint summary judgment motions

4

challenging the viability of various sub-class ERISA and WARN Act claims.  First, they moved for judgment on Appellants' ERISA claims for severance benefits on the grounds that the plan had been properly terminated.  Second, they moved for judgment on all claims brought by the sub-class of employees who had received and signed a Stay Bonus Letter Agreement ("SBLA"), which released all claims related to their employment.[2]  And finally, they moved for judgment on all WARN Act claims brought by the sub-class of Appellants who had received 60 days' notice of the plant closure as required by the WARN Act.

Critically, for purposes of this appeal, Appellants opted not to file a response in opposition to Garrison's motion for summary judgment on the single employer theory. Instead, Appellants moved to voluntarily dismiss Garrison without prejudice in *Messer I* pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  Appellants assert that they moved to voluntarily dismiss Garrison in order "to preserve counsel, party and court resources as the parties complete briefing and argue [BCI's] Motions for Partial Summary Judgment and prepare for the pending [] March trial, which [Appellants] believe should focus on the liability of [BCI] for the Warn Act violations alleged in the complaint."  J.A. 194.

---

[2] BCI sent a memorandum to the employees who remained employed following the first wave of terminations offering them a $1,000 bonus for working throughout the company's wind down process.  To receive the bonus, employees were required to execute an SBLA, which released all claims related to their employment, including an express waiver of all WARN Act claims and the right to join the lawsuit.  *Messer, et al. v. Bristol Compressors International, LLC*, No. 1:18-CV-00040, 2019 WL 2550328, at *1 (W.D. Va. June 20, 2019).

Garrison opposed Appellants' motion to dismiss it without prejudice. Garrison argued:

> [Appellants] know that [BCI] is insolvent. The company is, and will remain, incapable of satisfying any judgment [Appellants] could obtain. That reality is why [Appellants] named Garrison as a defendant and asserted the single employer theory under the Department of Labor regulations, 20 C.F.R. § 639.3(a)(2). And that reality is why the claim against Garrison must be dismissed *with prejudice* now, or litigated to a conclusion with Garrison remaining a party to the case.

J.A. 194 (emphasis supplied). Nevertheless, the district court granted Appellants' motion to dismiss Garrison in *Messer I* without prejudice, finding that Garrison had not "shown sufficient legal prejudice to justify denying" the motion. J.A. 194.

In the same order granting Appellants' motion to dismiss Garrison, the district court also considered whether BCI's severance pay plan was an employee welfare plan governed by ERISA. Ultimately, although the court found that the severance plan was such a plan, it held that ERISA had not been violated and granted partial summary judgment to BCI on that issue. The district court also granted BCI's partial summary judgment motion on all claims by the sub-class of employees who signed an SBLA. And the district court granted BCI's motion for partial summary judgment concerning the sufficiency of the WARN notice, finding that the WARN Act had not been violated as to that sub-class of employees.

Following the dismissal of Garrison and the grant of BCI's partial motions for summary judgment, the district court held a bench trial on all remaining WARN Act claims. BCI, the only remaining defendant, did not appear at the trial. At the conclusion

6

of the trial, BCI was found liable for violating the WARN Act, and Appellants were awarded a judgment against BCI in the amount of $1,392,915.40.

B.

The *Messer I* Appeal

Appellants appealed the adverse aspects of the summary judgment rulings against them in *Messer I*. We affirmed in part, vacated in part and remanded the case. *Messer v. Bristol Compressors Int'l, LLC*, No. 21-2363, 2023 WL 2759052 (4th Cir. Apr. 3, 2023). Specifically, we affirmed the grant of summary judgment in favor of BCI on the claims by employees who signed an SBLA and released their claims. But, relevant here, we vacated the summary judgment rulings in favor of BCI related to the elimination of the severance plan pursuant to ERISA and the WARN Act claims. In doing so, we held that (1) the severance plan was covered by ERISA; and (2) BCI did not properly terminate the plan in compliance with ERISA in light of the established BCI employee handbook procedures requiring BCI's human resources department to effectuate the elimination of the plan in writing.

Following remand, Appellants moved for summary judgment with respect to both the ERISA and the WARN Act claims. Yet again, BCI did not appear or file a response. The district court granted summary judgment to Appellants, and Appellants were awarded an additional $2,407,471.90 pursuant to the WARN Act and ERISA, as well as $277,717.81 in attorneys' fees and costs. J.A. 196; *Messer I*, No. 1:18-CV-00040, 2024 WL 1259270 (W.D. Va. Mar. 25, 2024). This brought the total judgment amount against BCI to $4,078,105.11.

7

C.

The Present Lawsuit and Appeal

As Garrison predicted, Appellants have been unable to collect on the judgment against BCI due to BCI's insolvency and dissolution. As a result, in August 2024, Appellants filed the present action seeking to hold Garrison liable for the *Messer I* judgment based on alter ego and veil piercing theories. In addition to suing Garrison, Appellants sued 14 other individuals and entities (together with Garrison, "Appellees") who were never named parties in *Messer I*.[3]

In their complaint, Appellants allege, "[t]his suit is a continuation of [*Messer I*] for the purpose of collecting judgments for the [Appellants]." J.A. 11. Specifically, Appellants assert that they are "seek[ing] judgment of liability and both equitable and legal remedies against Garrison, its agents, related entities and individual owners as employers and fiduciaries for their 'instrumentality' control, management and liquidation of BCI in violation of the WARN ACT by unjustly and illegally depriving [Appellants] of required notices of BCI plant closure, attendant backpay, and stay-pay, and the unjust and unlawful denial of their vested employee benefit Severance Pay Plan (SSP) in violation of ERISA." *Id.* Appellants allege that Appellees are liable for the judgment because "[Appellees] liquidated BCI and knowingly, recklessly and intentionally distributed the receipts while failing to pay their legal and fiduciary obligations to [Appellants] under these statutes." *Id.*

---

[3] These additional named parties are "Garrison owners, agents and affiliated entities and owners who managed, controlled and liquidated BCI." J.A. 10.

8

Appellants allege that ERISA and the WARN Act give rise to federal jurisdiction in this case. And in their demand for relief, Appellants ask that the district court: (1) "[e]nter judgment against [Appellees] and their owners individually, jointly and severally for all amounts, due and owing [Appellants] under this Court's judgments in the amount of [$4,078,105.11] plus accumulated interest, fees, cost, and attorney's fees for prosecuting this matter, amounting to [$5,000,000]"; and (2) [g]rant [Appellants] . . . WARN Act backpay, the payment of employer wage contributions and the [remaining] cost[s]." J.A. 30. Appellants claim they are entitled to this relief "[b]ecause the alter ego and instrumentality doctrines for piercing the corporate veil and federal common law allow derivative liability to be placed upon a corporation's individuals [such as Appellees who] are responsible for these judgments [in *Messer I*]." *Id.* at 27.

Appellees moved to dismiss on multiple grounds, including lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Alternatively, Appellees argued that Appellants' claims are time barred pursuant to the applicable statute of limitations for ERISA and the WARN Act.

The district court granted Appellees' motion to dismiss due to lack of subject matter jurisdiction. The court noted that although Appellants cited the WARN Act and ERISA as sources of federal jurisdiction, they are demanding that judgment be entered against Garrison for the previous judgment against BCI in a case from which Garrison was dismissed. To that end, the court cited the Supreme Court's 1996 decision in *Peacock v. Thomas* for the proposition that federal courts lack "ancillary jurisdiction over new actions

9

in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." 516 U.S. 349, 350–51 (1996). The district court reasoned, "[b]ecause the Complaint seeks only to enforce the previous judgment against Garrison, which was never found liable for the WARN Act or ERISA violations, this court does not have subject matter jurisdiction." J.A. 200. Alternatively, the court held, "[e]ven if [Appellants] had not moved to dismiss their claims against Garrison and it had been found liable [in *Messer I*], the statute of limitations on any WARN Act or ERISA claim arising out of the plant closing has now run." *Id.* at 202.

Appellants timely appealed, challenging both grounds for dismissal.

## II.

"We review a district court's dismissal for lack of subject-matter jurisdiction de novo." *Evans v. United States*, 105 F.4th 606, 612 (4th Cir. 2024) (citing *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013)). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing that it exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

## III.

There are two relevant avenues that could provide federal jurisdiction over this lawsuit. The first is 28 U.S.C. § 1331 which provides federal question jurisdiction. And the second is federal common law ancillary jurisdiction. As we explain below, both avenues fail to establish jurisdiction here.

A.

Section 1331 Federal Question Jurisdiction

Federal courts have jurisdiction over all cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see also* U.S. Const. art. III, § 2. Relevant here, a case most commonly "arises under federal law" and confers jurisdiction "when federal law creates the cause of action asserted."  *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014) (citation omitted).

Appellants assert that the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because their claims arose under 29 U.S.C. § 1132(a)(3)(B) (ERISA) and 29 U.S.C. § 2104 (the WARN Act).  This avenue of conferring jurisdiction is often referred to as the "federal question doctrine."  However, in this case, Appellants do not allege any new or additional violations of the federal statutes at issue beyond those cited in *Messer I*. Rather, the present action is solely an effort to collect on the BCI judgment from *Messer I* because BCI is unable to pay.  But, as explained below, the Supreme Court has determined that this is an improper means by which to establish Section 1331 subject matter jurisdiction.  *Peacock v. Thomas*, 516 U.S. 349 (1996).

1.

ERISA

In *Peacock*, the plaintiff (Thomas) sued his former employer, Tru-Tech, and Peacock (an officer and shareholder of Tru-Tech), in an ERISA class action to recover benefits due under the employer's pension benefits plan.  *Peacock*, 516 U.S. at 351.  The district court ruled that Tru-Tech breached its fiduciary duties, but that Peacock was not a

11

fiduciary. *Id.* The court thus entered judgment against Tru-Tech only. *Id.* But when Thomas was unable to collect the judgment from Tru-Tech, he brought a second action against Peacock seeking to pierce the corporate veil in order to satisfy the original judgment. *Id.* at 352.

The Supreme Court held that there was no subject matter jurisdiction over the second action. *Peacock*, 516 U.S. at 351. In doing so, the Court first rejected Thomas' reliance on ERISA as the source of federal jurisdiction, observing, "[w]e are not aware of, and Thomas does not point to, any provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party." *Id.* at 353. Instead, the Court held that there must be an underlying violation of ERISA to sustain subject matter jurisdiction. *Id.* at 353–54 ("Thomas could invoke the jurisdiction of the federal courts *only by* independently alleging a violation of an ERISA provision or term of the plan." (emphasis supplied)). And the Court held that the attempt by Thomas to frame Peacock's liability under the corporate veil piercing doctrine as an underlying violation of the federal statute was improper because "[p]iercing the corporate veil is not itself an independent ERISA cause of action." *Id.* Ultimately, the Court held that because the second action did not allege a new violation of any federal law, the district court did not possess federal question jurisdiction in the second suit.

The same is true here. There is no dispute that the present action does not concern any new or additional violations of ERISA. Instead, Appellants seek only to enforce the previous judgment against BCI from *Messer I* against Garrison in this case. Indeed, as Appellants plainly state, "[t]his suit is a continuation of the prior class action, *Messer I*, for

12

the purpose of collecting judgments directly from the owner, lender and fiduciary, Garrison, for [Appellants]." Appellants' Opening Br. at 4.

Therefore, because Appellants do not allege any additional ERISA violations beyond those litigated in *Messer I*, there is no independent basis for subject matter jurisdiction. *See Peacock*, 516 U.S. at 354 ("Because Thomas alleged no 'underlying' violation of any provision of ERISA or an ERISA plan, neither ERISA's jurisdictional provision, 29 U.S.C. § 1132(e)(1), nor 28 U.S.C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit."). And, as the Court instructed, ERISA does not provide an independent cause of action sufficient to pierce the corporate veil. *Id.*

### 2.

### The WARN Act

Appellants' WARN Act claims are also proscribed by *Peacock*. Although *Peacock* was decided within the context of an ERISA action rather than the WARN Act, the underlying proposition still squarely applies here -- without any new or additional violations of the federal statute at issue, there is no independent basis for federal question jurisdiction.

The WARN Act provides a cause of action for an "employee who suffers an employment loss as a result of [a plant] closing or [mass] layoff." 29 U.S.C. § 2104(a)(1). The statute thus authorizes a "person seeking to enforce such liability" to sue in a federal district court. *Id.* § 2104(a)(5).

Here again, there are no allegations of new WARN Act violations. Appellants are merely attempting to collect from Garrison the judgment entered in *Messer I* against BCI.

13

But the WARN Act goes on to declare that the "remedies provided for in this section shall be the exclusive remedies for any violation of this chapter." *Id.* § 2104(b). Thus, where the WARN Act is the substantive basis for an employee's claims, the sole remedy for that employee is the WARN Act itself. To recover for a WARN Act violation, a plaintiff must rely on the WARN Act rather than alternative theories such as piercing the corporate veil.

Were there any doubt about this conclusion, the WARN Act regulations promulgated by the Department of Labor ("DOL") foreclose the applicability of duplicative theories of recovery such as piercing the corporate veil. The DOL regulations specify "factors to be considered" in determining whether a related entity is so intertwined with the employer that the two may be considered a single employer, such that the related entity may be liable for the actual employer's WARN Act violation. 20 C.F.R. § 639.3(a)(2). These factors include: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2); *see also Fleming v. Bayou Steel BD Holdings II LLC.*, 83 F.4th 278, 294–95 (5th Cir. 2023) ("The WARN Act does not address when a related entity may be held liable under a single employer theory. But the [DOL] has done so via regulation."). And we regularly apply these DOL factors. *See, e.g.*, *Pennington v. Fluor Corp.*, 19 F.4th 589, 600 (4th Cir. 2021) ("In short, the five Department of Labor factors make clear that this case does not meet the standard for single-employer liability. Any different result would need to await the action of Congress.").

14

Thus, utilizing veil piercing for WARN Act liability would be redundant because in the context of the WARN Act, the corporate veil piercing doctrine, which allows courts to "disregard the corporate entity [and] treat[] the parent corporation and its subsidiary as a single entity," *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013), serves the same purpose as the DOL regulations in determining whether parent companies, owners, or creditors should be treated as single employers for WARN Act violations. *See e.g., Kane v. PaCap Aviation Fin., LLC*, No. CV 19-00574, 2024 WL 5485919, at *51 (D. Haw. Sep. 13, 2024).

Our sister circuits have likewise declined to authorize alternate theories of liability for underlying WARN Act violations in light of the DOL regulations. *See, e.g.*, *Pearson v. Component Technology Corp.*, 247 F.3d 471, 483–91 (3d Cir. 2001) (describing the various tests courts have adopted to analyze single employer liability pursuant to the WARN Act, including veil piercing, and ultimately concluding that "the appropriate test is the one specifically delineated in the DOL regulation"); *In re Bluffton Casting Corp.*, 186 F.3d 857, 860–61 (7th Cir. 1999) (ruling that employees could not re-litigate WARN Act claims in a new complaint because the WARN Act permits "rights or remedies based on the same facts, *as long as the substantive basis for these rights and remedies is not the WARN Act itself*") (emphasis supplied), *overruled on other grounds by In Re Bentz Metal Prods. Co.*, 253 F.3d 283 (7th Cir. 2001).

In sum, permitting Appellants to proceed on their veil piercing theory would expand WARN Act liability beyond the scope set by the Supreme Court, our court, other Circuits, and the DOL.

15

Appellants have thus failed to meet their burden to establish that subject matter jurisdiction exists here via either ERISA or the WARN Act.

3.

Allegations of Independent ERISA and WARN Act Violations

Appellants argue that they are in fact asserting independent ERISA and WARN Act claims against Appellees. But, this argument does not withstand a review of the record. For example, in their complaint, Appellants argue, "[b]ecause the alter ego and instrumentality doctrines for piercing the corporate veil and federal common law allow derivative liability to be placed upon a corporation's individuals, [Appellees] are responsible for the[] judgments [in *Messer I*]." J.A. 27. Appellants further assert, "[t]his suit is a continuation of the prior class action [*Messer I*] for the purpose of collecting judgments for [Appellants]." *Id.* at 11. And in their demand for relief, Appellants sought entry of "judgment against [Appellees] for all amounts, due and owing [Appellants] under this Court's judgments." *Id.* at 30. These excerpts clearly highlight that the present action is not an attempt to separately allege new ERISA or WARN Act violations against Appellees but is instead an attempt to pierce the corporate veil in order to establish. Appellees' liability for the original judgment against BCI. And we lack federal question jurisdiction to review such claims.

16

B.

Ancillary Jurisdiction

Absent allegations of independent violations of the federal statutes purportedly supporting federal question jurisdiction, we are left to determine whether we may nonetheless exercise ancillary jurisdiction over this action.  We may not.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "But sometimes the federal courts are permitted to entertain a claim or an incidental proceeding that does not satisfy requirements of an independent basis of subject matter jurisdiction."  13 Wright & Miller's Federal Practice & Procedure § 3523.2 (3d ed. 2026). This concept, known as supplemental jurisdiction, permits federal courts to exercise jurisdiction over claims that, while not independently satisfying the requirements of subject matter jurisdiction, "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Ancillary jurisdiction is a subspecies of supplemental jurisdiction.  It comes in two forms.  First, Section 1367 grants federal courts jurisdiction "over *claims* asserted in a case over which the district court [otherwise] has [Section 1331] jurisdiction."  *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir. 2010).  Second, federal common law grants federal courts ancillary jurisdiction "over related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction."

17

*Id.* (quoting 13 Wright & Miller's Federal Practice and Procedure § 3523.2 (3d ed. 2010));
*see also Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 551 (7th Cir. 2021) ("Congress
codified much of the first category in the supplemental jurisdiction statute, 28 U.S.C.
§ 1367, while the latter category—at times called 'ancillary enforcement jurisdiction'—
remains grounded in federal common law."); *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th
1307, 1318 (10th Cir. 2022) (same). This case concerns new proceedings, rather than new
claims in an ongoing proceeding.

Relevant to this appeal, "[i]t is well-settled that a federal court may exercise
ancillary jurisdiction to enforce its judgments." *Marino v. Pioneer Edsel Sales, Inc.*, 349
F.3d 746, 752 (4th Cir. 2003). In fact, the Supreme Court has "approved the exercise of
ancillary jurisdiction over a broad range of supplementary proceedings involving third
parties to assist in the protection and enforcement of federal judgments—including
attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent
conveyances." *Peacock*, 516 U.S. at 356. Although federal courts have the authority to
exercise this power, the Supreme Court has nonetheless outlined certain types of
enforcement proceedings that *do not* fall within the ambit of ancillary jurisdiction -- one of
which is the circumstance we face in this case.

The Supreme Court has specifically recognized that ancillary jurisdiction does not
extend to "new actions in which a federal judgment creditor seeks to impose liability for a
money judgment on a person not otherwise liable for the judgment." *Peacock*, 516 U.S. at
350–1. This is so, the Court concluded, because "[i]n a subsequent lawsuit [against a third
party] involving claims with no independent basis for jurisdiction, a federal court lacks the

18

threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Id.* at 355; *see also* 36 C.J.S. Federal Courts § 23 (March 2026 Update) ("[I]f a party has obtained a valid federal judgment, only extraordinary circumstances can justify the assertion of ancillary jurisdiction in a later action.").

In reaching this conclusion, the Court made clear that subsequent suits to enforce judgments entered in prior federal actions must have their own source of federal jurisdiction when they involve new theories of liability, such as fraudulent conveyances or piercing the corporate veil. *Peacock*, 516 U.S. at 358–59. This is particularly true where, as here, the subsequent suit named as defendants parties not found liable in the first suit. In these circumstances, a district court's jurisdiction over the first suit does not carry over to a new, independent suit, even when the new suit is brought to enforce a prior federal judgment. *Id.* at 359.

*Peacock* plainly forecloses Appellants' efforts to enforce the judgment in *Messer I* against Appellees. When Appellants voluntarily dismissed Garrison in *Messer I*, the case proceeded to judgment against BCI -- and BCI only. Thus, the only entity "already liable for that judgment" is BCI. *Peacock*, 516 U.S. at 357 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."); *see e.g., Continental Indemnity Company v. BII, Inc.*, 104 F.4th 630, 644 (7th Cir. 2024) (explaining that there is no ancillary jurisdiction when a plaintiff "seeks to hold a new party liable on a new theory," as "[t]his is the type of dispute that courts have found to fall outside their

19

ancillary enforcement jurisdiction"). And, again, because Appellants do not allege any additional ERISA violations beyond those litigated in *Messer I*, there is no independent basis for subject matter jurisdiction. *See, e.g.*, *Peterson v. Bank Markazi*, 121 F.4th 983, 1000 (2d Cir. 2024) (holding that although the plaintiffs claimed that they were relying on a federal statute for liability rather than common law alter ego principles to support their veil piercing theory, their underlying claim was "ultimately an attempt to establish liability directly on the part of a new party," and "[u]nder *Peacock*, ancillary jurisdiction cannot extend to this type of claim") (internal quotation marks and citation omitted).

C.

Lack of Federal Subject Matter Jurisdiction

In sum, because Appellants' suit here is based exclusively on veil piercing and does not allege any new or additional ERISA or WARN Act violations, and because their voluntary dismissal of Garrison from *Messer I* resulted in a judgment against BCI only, the district court correctly held that it lacked federal subject matter jurisdiction in this action. *See Peacock*, 516 U.S. at 357–58; *Alexandria Resident Council, Inc. v. Alexandria Redev. & Hous. Auth.*, 218 F.3d 307, 308–09 (4th Cir. 2000); *Marino*, 349 F.3d at 752; *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 581 (4th Cir 2015); *U.S. ex rel. Bunk v. Gov't Logistics N.V.*, 842 F.3d 261, 273 (4th Cir. 2016).[4]

---

[4] Because we resolve this case based on the lack of subject matter jurisdiction, we do not reach the alternative reasoning of the district court that the case should be dismissed as untimely.

20

As Appellees' counsel aptly stated at oral argument, this is "not a case of Garrison . . . not being willing to face the music.  It's a case of the plaintiffs not doing their job." Oral Argument at 26:27–34, *Messer v. Garrison*, No. 25-1657 (4th Cir. Mar. 17, 2026), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.